UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIAM J. RENNINGER,

    Petitioner,

    v.      CAUSE NO.: 3:19-CV-876-RLM-MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

William J. Renninger, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Westville Correctional Facility (WCC 19-08-006) in which he was found guilty of possessing offensive materials in violation of disciplinary rule B-246, and lost 60 days of earned-time credits.

The charge was initiated on August 1, 2019, when Officer A. Miranda wrote a conduct report stating as follows:

> On 8-1-19 at approx. 9:38 am I Officer Miranda was conducting a shake down on offender Renninger William 161711 assigned bed area 8L-EI-7L when I found unauthorized sexual act pictures in his property box.

The report reflects that the pictures were sent to the Indiana Department of Correction Office of Investigations and Intelligence. On August 14, 2019, Mr. Renninger was formally notified of the charge. The screening report reflects that he declined the assistance of a lay advocate and didn't request any witnesses or evidence.

On August 22, 2019, the hearing officer held a hearing on the charge. Mr. Renninger made the following statement in his defense: "Not guilty. They were

not in my box they were in my neighbor's. I have never seen them before." The hearing officer found Mr. Renninger guilty. He imposed a sanction of 30 days lost earned-time credits, as well as a previously suspended sanction of 30 days for another disciplinary offense. He imposed this sanction because of the seriousness of the offense, the frequency and nature of Mr. Renninger's conduct violations, and his attitude and demeanor during the hearing. Mr. Renninger didn't appeal to the facility head or the final reviewing authority.

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539 (1974). To satisfy due process, there must be "some evidence" to support the hearing officer's decision. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Giving the petition liberal construction, Mr. Renninger claims that he was denied the right to present evidence, the right to a written statement by the fact-finder, and the right to an impartial decisionmaker. The respondent argues that Mr. Renninger's claims are procedurally defaulted because he didn't file an administrative appeal.

A petitioner must exhaust all available state remedies can obtain federal habeas relief, and a failure to do so constitutes a procedural default precluding relief on the merits. 28 U.S.C. § 2254(b)(1)(A); Markham v. Clark, 978 F.2d 993, 995-96 (7th Cir. 1992). Indiana doesn't provide judicial review of decisions by prison administrative bodies, so a petitioner satisfies the exhaustion requirement in 28 U.S.C. § 2254(b) by pursuing available administrative remedies. Moffat v. Broyles, 288 F.3d 978, 981-82 (7th Cir. 2002). "Indiana offers two levels of administrative review: a prisoner aggrieved by the decision of a disciplinary panel may appeal first to the warden and then to a statewide body called the Final Reviewing Authority." *Id.* To properly exhaust, "a legal contention must be presented to each administrative level." *Id.*

A federal court may consider a defaulted claim if the petitioner establishes both "cause" to excuse his default and "actual prejudice resulting from the alleged constitutional violation." Crutchfield v. Dennison, 910 F.3d 968, 973 (7th Cir. 2018) (citation and internal quotation marks omitted). "Cause is an objective factor external to the defense that impeded the presentation of the claim to the state courts," and only applies to factors that "cannot fairly be attributed to the prisoner." *Id.* (citation and internal quotation marks omitted). Prejudice exists where an error "so infected the entire [proceeding] that the resulting conviction violates due process." Johnson v. Foster, 786 F.3d 501, 505 (7th Cir. 2015.) A petitioner may also obtain review of a defaulted claim where he establishes that failure to consider the claim would result in a miscarriage of justice. *Id.* This narrow exception requires the petitioner to establish that "a constitutional

3

violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citation omitted).

The record reflects that Mr. Renninger didn't pursue an appeal at either level of administrative review provided for under state law, so his claims are therefore procedurally defaulted. Moffat v. Broyles, 288 F.3d at 981-982. Mr. Renninger suggests that his default should be excused because prison staff prevented him from filing an appeal. He claims that when he appeared for a hearing, he was told that it was being postponed. He claims he didn't learn he had been found guilty until September 6, 2019, when he was meeting with his mental health counselor and she looked the case up on her computer. He submits documentation showing that on September 7, 2019, he submitted "request for interview" forms to the hearing officer, the warden, and other prison staff, complaining that the hearing officer found him guilty without first reviewing the video evidence, among other improprieties. On that same date, he also submitted a grievance to the facility grievance specialist complaining about the hearing officer's handling of the case and asking that the guilty finding be expunged and his earned-time credits restored.

The record belies Mr. Renninger's allegations about the hearing being postponed. It reflects that he appeared at the hearing and made a statement in his defense. The report also reflects that the hearing officer chose the sanction based in part on Mr. Renninger's demeanor during the hearing. In short, the administrative record shows that the hearing proceeded and concluded on August 22, 2019.

4

Even if the court were to accept Mr. Renninger's allegations as true, it's clear from his own filings that he was aware as of September 6, 2019, that he had been found guilty by the hearing officer. Given the internal prison forms he submitted, it is also clear that he believed his due process rights had been violated, yet he didn't pursue a disciplinary hearing appeal to either the facility head or the final reviewing authority. Filing "request for interview" forms and a grievance wasn't the proper procedure.[1] Moffat v. Broyles, 288 F.3d at 982; *see also* Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). Even if the request for interview form sent to the warden could be considered a first-level appeal, Mr. Renninger didn't pursue an appeal or otherwise present his due process claims to the final reviewing authority, which is a necessary step. Moffat v. Broyles, 288 F.3d at 982. Nothing in the record to suggests that prison officials prevented him from doing so. He hasn't established cause to set aside his default.

Mr. Renninger raises the miscarriage of justice exception, without making a clear argument as to how it applies to him. He might be arguing that he is "innocent" because Officer Miranda didn't specifically list the identification code on the property box in which the pictures were found in the conduct report. Unlike in a criminal case, guilt need not be proven beyond a reasonable doubt

---

[1] In one of his filings, Mr. Renninger acknowledges that he was familiar with his rights under the disciplinary rules because he served as a lay advocate for approximately a year. (ECF 2-1 at 1.) Under the disciplinary code, to be approved to serve as a lay advocate, an inmate must "[h]ave a demonstrated working knowledge of this policy and administrative procedure." Disciplinary Code, § IX(D)(1)(e).

5

in a prison disciplinary proceeding. Moffat v. Broyles, 288 F.3d at 981. Rather, there only needs to be "some evidence" to support the finding of guilt. Supt. v. Hill, 472 U.S. at 455. This is a "lenient standard, requiring no more than a modicum of evidence," and even "meager proof will suffice." Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can be enough evidence to support a finding of guilt, McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999), as can circumstantial evidence. Meeks v. McBride, 81 F.3d 717, 721 (7th Cir. 1996).

This conduct report states that Officer Miranda found the pictures in the property box belonging to Mr. Renninger located in his assigned bed area. Under prison rules, "possession" means "[o]n one's person, in one's quarters, in one's locker or under one's physical control." IDOC Manual of Policies & Procedures, Disciplinary Code for Adult Offenders (herein "Disciplinary Code"), § III(BB) (eff. June 1, 2015). Prison rules also presume inmates

> to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control. Areas under an offender's control include, but are not limited to: the door track, window ledge, ventilation unit, plumbing and the offender's desk, cabinet/locker, shelving, storage area, bed and bedding materials in his/her housing assignment and the desk, cubicle, work station and locker in his/her work, educational or vocational assignment.

Id. The conduct report provided ample evidence that the pictures were found in Mr. Renninger's property box and so were in his possession. To the extent Mr. Renninger relies on prison policy to argue that the officer was required to note the identification number on the property box, an officer's violation of prison policy doesn't establish a constitutional violation. Estelle v. Gamble, 502 U.S.

6

62, 67–68 (1991); Keller v. Donahue, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). Mr. Renninger hasn't established that he meets the narrow miscarriage of justice exception.

If Mr. Renninger could overcome his procedural default, his claims wouldn't entitle him to relief on the merits. He first claims that he was denied the right to review and present evidence. The full panoply of rights available at a criminal trial don't apply in the prison disciplinary context. Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992). An inmate does have a right to request and present evidence when consistent with institutional safety and correctional goals. Wolff v. McDonnell, 418 U.S. at 564. The screening report, which Mr. Renninger signed, reflects that he didn't request any witnesses or evidence. Although he suggests that he didn't know the screening officer checked these boxes, he doesn't explain why he signed this document if it didn't accurately reflect his wishes. The prison can't be faulted for failing to consider evidence that Mr. Renninger didn't properly request. Sweeney v. Parke, 113 F.3d 716, 720 n.5 (7th Cir. 1997); *see also* Miller v. Duckworth, 963 F.2d 1002, 1005 n.2 (7th Cir. 1992) (observing that a "prisoner certainly cannot wait until the day of the hearing to make such requests").

Additionally, to the extent Mr. Renninger wanted an opportunity to view the pictures found in his property box, "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." White v. Ind. Parole Bd., 266 F.3d 759, 767 (7th Cir. 2001). The court

7

concludes that turning over the pictures to Mr. Renninger could have jeopardized institutional safety. *See* Wolff v. McDonnell, 418 U.S. at 566; Jones v. Cross, 637 F.3d 841, 847 (7th Cir. 2011). Mr. Renninger hasn't explained how viewing the pictures would have aided his defense; he already told the hearing officer that the pictures weren't his and that he had never seen them before. *See* Piggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003) (denial of evidence is considered harmless unless the evidence would have aided the inmate's defense).

Mr. Renninger also wanted to question Officer Miranda, but he had no general right to "confront and cross examine adverse witnesses." Rasheed-Bey v. Duckworth, 969 F.2d at 361. Prison rules allowed him to submit written questions in advance of the hearing, but there is no indication that he did so. *See* Disciplinary Code, § IX(D)(2)(l). Moreover, the questions he intended to pose to Officer Miranda—namely, whether he "participated in a dorm wide shakedown and not just my area," and how many other property boxes were in the area— would not have directly undercut the officer's account that he found the photographs in Mr. Renninger's property box next to his bed. (*See* ECF 15 at 3-4.) Likewise, he has not explained why surveillance video showing that a dorm-wide search was conducted would have exculpated him from the charge. Mr. Renninger also wanted to ask Officer Miranda "why he did not follow policy and document the number" on the property box, but as stated above, the officer's failure to follow departmental policy would not exculpate Mr. Renninger from the charge or establish a constitutional violation. Estelle v. Gamble, 502 U.S. at 67–68; Keller v, Donahue, 271 F. App'x at 532. Mr. Renninger also mentions that he

8

wanted fingerprint evidence and a polygraph test, but there is nothing in the record to suggest that such evidence existed. Prisoners have a right to submit relevant exculpatory evidence, but they don't have the right to the creation of evidence that does not already exist. Wolff v. McDonnell, 418 U.S. at 556. He hasn't established a violation of his due process rights in connection with this claim.

Mr. Renninger next claims that he was denied a written statement by the decisionmaker. Due process requires a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 564. The written statement requirement is "not onerous" and "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." Scruggs v. Jordan, 485 F.3d 934, 941 (7th Cir. 2007). The hearing report reflects that the hearing officer relied on the conduct report to find Mr. Renninger guilty. The report further reflects that the sanction imposed was based on the seriousness of the offense, the frequency and nature of Mr. Renninger's conduct violations, and his attitude and demeanor during the hearing. Though not overly detailed, the report adequately explains the evidentiary basis and reasoning behind the hearing officer's decision.

Mr. Renninger claims that he wasn't given a copy of the report after the hearing. The record belies this argument: it reflects that Mr. Renninger refused to sign for the report, not that the hearing officer failed to give him one. A prisoner can't manufacture a constitutional violation through his own conduct. *See generally* Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005). In any event,

9

Mr. Renninger has received a copy of the hearing report now, as it is attached to the respondent's motion. *See* Jensen v. Knight, No. 1:18-CV-03230-TWP-MPB, 2019 WL 3779767, at *4 (S.D. Ind. Aug. 12, 2019) (observing that with respect to the written statement requirement, "there is no hard time limit under federal constitutional law for providing the inmate with this information"). Moreover, to obtain habeas relief on this claim, Mr. Renninger would have to show that the delay prejudiced him. Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error analysis applies to prison disciplinary proceeding); *see also* O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (constitutional error is harmless unless it had a "substantial and injurious effect" on the outcome of the proceedings). To the extent Mr. Enninger might be claiming that the lack of a report hindered his ability to exhaust his administrative appeals, he hasn't been prejudiced because this court has considered his claims on the merits despite his lack of exhaustion.[2] *See* Jensen v. Knight, 2019 WL 3779767, at *4 (inmate didn't establish that hearing officer's failure to provide him a copy of hearing report prejudiced his ability to pursue an appeal, where the court bypassed the exhaustion issue and considered his claims on the merits).

Finally, Mr. Renninger claims that he was denied an impartial decisionmaker. Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." Piggie

---

[2] The court doesn't presume that the lack of a report hindered his ability to file an administrative appeal. Even without the report, he was able to craft very specific due process arguments challenging the guilty finding, which are contained in his petition and supporting memorandum. There appears to be no reason he couldn't have included these same arguments in an administrative appeal.

10

v. Cotton, 342 F.3d at 666. Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* Due process isn't violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Mr. Renninger doesn't argue, and the record offers no reason to conclude, that the hearing officer was involved in any way in the underlying incident leading to the disciplinary charge. Rather, Mr. Renninger's claim of bias appears to be based on his allegation that the hearing officer told him that because a sergeant signed off on the conduct report, he was "not reducing" the charge. (ECF 2 at 2.) This claim is based entirely on Mr. Renninger's uncorroborated account, but even accepting it as true, the fact that the hearing officer made a statement about not "reducing" the charge doesn't mean he had prejudged Mr. Renninger's guilt.[3] To the extent Mr. Renninger is claiming that the hearing officer made an arbitrary decision, "prisoners are entitled to be free from arbitrary actions of prison officials, but . . . even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." McPherson v. McBride, 188 F.3d

---

[3] Under the disciplinary code, a hearing officer's decision "shall be guilty, not guilty, or dismissed." Disciplinary Code, § IX(E)(2)(b). "If an offender admits guilt or the evidence shows guilt of an equal or lesser related disciplinary code violation," the hearing officer has discretion to find the inmate guilty of the lesser code violation. *Id.* There is no indication from the record that Mr. Renninger admitted his guilt or argued to the hearing officer that a lesser related disciplinary offense more closely matched the conduct underlying the charge.

11

at 787. As already outlined, Mr. Renninger hasn't established that his due process rights were violated.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 2);

(2) DIRECTS the clerk to enter judgment in this case.

SO ORDERED on October 13, 2020

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
